**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION**

| | |
|---|---|
| **VOLT POWER, LLC,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. 1:21-cv-00395-DCJ-JPM |
| | ) |
| **JAMES ERIC DEVILLE,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

<u>**MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**</u>

NOW INTO COURT comes Plaintiff, Volt Power, LLC ("Volt"), and submits this Memorandum in Support of its Motion Preliminary Injunction against Defendant, James Eric Deville ("Deville"). In support of that Motion, Volt respectfully states as follows:

### I.   INTRODUCTION

This lawsuit concerns Volt's claims against Deville, the former Manager of Volt's Joint Use Division, who suddenly resigned from Volt on January 4, 2021. Volt recently discovered that the purpose of Deville's resignation was to accept a position with Shelton Energy Solutions, LLC ("Shelton Energy"), one of Volt's direct competitors. Volt has also discovered that, prior to his resignation, Deville misappropriated Volt's trade secrets and other commercially sensitive business information (the "Misappropriated Information") including, but not limited to, pricing information and documentation of Volt's progress on several projects for its clients. Since his resignation from the Company, Deville is using the Misappropriated Information to wrongfully compete with Volt through his position with Shelton Energy - a direct competitor of Volt—and to solicit Volt's clients. Volt has suffered and will continue to suffer permanent and irreparable harm as a result of Deville's continued and unrestrained conduct. Therefore, Volt respectfully requests the Court's intervention. Specifically, Volt requests that the Court enjoin Deville from

continuing to use or possess the Misappropriated Information; to allow Volt to inspect Deville's electronic devices to determine the scope and use by Deville of the Misappropriated Information; and, to bar Deville from competing with Volt and soliciting Volt's clients, particularly while he is in possession of the Misappropriated Information.

## II.   BACKGROUND

### A.   Deville's Wrongful Conduct

The facts that give rise to this lawsuit are alleged in detail in Volt's Verified Complaint, Rec. Doc. No. 1. Deville, while still employed with Volt, took the Misappropriated Information without consent and has been using it to compete unfairly with Volt and to actively solicit its clients. Indeed, Deville is engaged in an ongoing violation of the Louisiana Uniform Trade Secrets Act, La. R.S. § 51:1431, *et seq*. (the "LUTSA"), the Louisiana Unfair Trade Practices Act, La. R.S. § 51:1401, *et seq.* (the "LUTPA"), and the federal Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq*. (the "DTSA"). Deville's misuse of the Misappropriated Information also constitutes a breach of the fiduciary duties he owed to Volt as a management-level employee of that company.[1] All of Deville's past and ongoing wrongful conduct is causing irreparable damage to Volt's business, including the loss of its clients and employees. As described below, Volt has a substantial likelihood of success on the merits of its claims against Deville, because, among other things, Deville does not have any a legitimate justification or defense for his deceitful and unlawful conduct.[2]

### B.  Volt's Proposed Preliminary Injunction

---

[1] As discussed more fully in the Verified Complaint, Deville entered into a Joint Representation Agreement with Volt (the "Agreement"). In the Agreement, Deville agreed that injunctive relief was the appropriate remedy to address violations of the Agreement.

[2] Volt's investigation is ongoing, and it reserves all rights to proceed with separate claims against Shelton Energy and other former Volt employees now working for Shelton Energy.

Volt respectfully requests that the Court prohibit Deville from possessing, utilizing, or disseminating the Misappropriated Information. Volt also requests that the Court require Deville to submit the electronic devices in his possession or control to a forensic computer examination for purposes of identifying, sequestering and purging any Volt property in Deville's possession, custody or control. Volt also requests that the Court enjoin Deville from further violations of his restrictive covenant obligations to it. Relatedly, because Deville's possession of Volt's Misappropriated Information gives him an unlawful advantage, Volt requests that the Court enjoin Deville from performing any work on behalf of Shelton Energy, or any other company that competes with Volt (including soliciting Volt's clients and employees) until there is verifiable forensic evidence that Deville has returned all of Volt's property. Specifically, Deville and anyone with whom he shared Volt's property must provide verifiable forensic evidence that they have returned all property to Volt and permanently purged it from their electronic devices and storage accounts (including cloud-based storage). Absent the injunctive relief requested in this Motion, Volt will continue to suffer irreparable harm.

### III.   LAW AND ARGUMENT

#### A.   Legal Standard.

A preliminary injunction is a remedy that may be granted if the movant establishes four elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is denied; (3) that the threatened injury outweighs any damage that the injunction might cause defendants; and (4) that the injunction will not disserve the public interest. *See, Sugar Busters LLC v. Brennan*, 177 F.3d 258, 264 (5th Cir. 1999). The requisite showing is "a substantial threat of irreparable injury if the injunction is

not issued." *See, DSC Commc'ns Corp. v. OGI Techs., Inc.*, 81 F.3d 597, 600 (5th Cir. 1996). While the movant must prove all four elements for the issuance of a preliminary injunction, courts weigh the elements equally. *See, Florida Med. Ass'n v. United States Dep't of Health, Educ. & Welfare*, 601 F.2d 199, 203 n.2 (5th Cir. 1979). Therefore, courts consider the elements jointly, and a strong showing of one element may compensate for a weaker showing of another. *Id.*

> Rule 65(d) of the Federal Rules of Civil Procedure provides:
>
> Every order granting an injunction and every restraining order must:
>
> (A)   state the reasons why it issued;
> (B)   state its terms specifically; and
> (C)   describe in reasonable detail-and not by referring to the complaint or other document-the act or acts restrained or required.

Fed. R. Civ. P. 65(d). District courts have discretion to grant or deny a preliminary injunction. *See Canal Authority of State of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974).

**B.   An Order for a Preliminary Injunction is Appropriate in this Case**.

As described in detail below, and in its Verified Complaint, Volt has demonstrated that an examination of the factors supports the preliminary injunctive relief requested in this case.

**1.   <u>Volt has a substantial likelihood of success on the merits</u>.**

Volt has a substantial likelihood of success on the claims as to which it requests a preliminary injunction. To establish that substantial likelihood, Volt need only demonstrate a *prima facie* case of its causes of action. *See,* Daniels *Health Scis., LLC v. Vascular Health Scis.*, 710 F.3d 579, 582 (5th Cir. 2013). Volt can do so here.

**(a)   Louisiana Uniform Trade Secrets Act and Defend Trade Secrets Act.**

In order to demonstrate a *prima facie* claim of violation of the LUTSA, a plaintiff must demonstrate: (1) the existence of a trade secret; and (2) the misappropriation of the trade secret

4

by another. *See*, *Pyramid Instrumentation & Elec. Corp. v. Hebert*, No. 17-1358, 2018 WL 1789325, at *3 (W.D. La. Mar. 14, 2018). A trade secret under the LUTSA is defined, in pertinent part, as information that: (a) derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. *See,* La. R.S. § 51:1431(4).

Similarly, a *prima facie* showing under the Defend Trade Secrets Act ("DTSA") requires: (1) the existence of a trade secret, (2) misappropriation of the trade secret by another, and (3) the trade secret's relation to a good or service used or intended for use in interstate or foreign commerce. *See,* 18 U.S.C. § 1836(b)(1); *See also*, *Source Prod. & Equip. Co., Inc. v. Schehr*, No. 16-17528, 2017 WL 3721543, at *2 (E.D. La. Aug. 29, 2017). The United States Code, 18 U.S.C.A. § 1839, defines trade secret as:

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if–
>
> (A) the owner thereof has taken reasonable measures to keep such information secret; and
>
> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

Additionally, the DTSA provides for a private cause of action for an "owner of a trade secret that is misappropriated ... if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1).

5

The Misappropriated Information that Deville transferred to external storage devices prior leaving the Company qualify as trade secrets. This information contains Volt's client project data and pricing, among other things. Additionally, the Misappropriated Information contains data that is not generally known or available to third parties outside of the Company and that is used in, or intended for use, in interstate commerce. The documents were only accessible through the use of a password, which is a reasonable method to maintain the security of that information.  Deville used a password to misappropriate computer files from Volt and use them for his own benefit, and for the benefit of his new employer, Shelton Energy. For all of these reasons, Volt has demonstrated a likelihood of success on its claims against Deville under the LUTSA and the DTSA by establishing a *prima facie* claim under both of those laws.

    (b)  **Louisiana Unfair Trade Practices Act.**

The LUTPA, codified in Louisiana Revised Statutes 51:1401 *et seq*., makes "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" unlawful.  *Newton v. Brenan*, No. 14-423 (La. App. 5 Cir. 12/16/14), 166 So.3d 285, 289. Acts that constitute unfair or deceptive practices are not specifically defined in the statute and are instead determined by courts on a case-by-case basis.  *Id*.  Under LUTPA, conduct is considered unfair or deceptive when it involves fraud, misrepresentation, deception, breach of fiduciary duty, or other unethical conduct.  *See, Creative Risk Controls, Inc. v. Brechtel*, No. 01-1150 (La. App. 5 Cir. 4/29/03), 847 So.2d 20, 24–25.

While feigning his status as a loyal, management-level employee of Volt, Deville was secretly working for Shelton Energy. In addition to working as a dual agent, Deville spent his final days at Volt quietly collecting its sensitive computer files in order to take those files and use them as his own.  In doing so, and as explained in more detail below, Deville breached his

fiduciary duties. Nevertheless, the general characterization of Deville's conduct (e.g. misrepresentation, fraud, breach of fiduciary obligations) is irrelevant. What is relevant is that Deville's conduct was wrongful and certainly within the type of conduct prohibited by the LUTPA. Accordingly, Volt has demonstrated a likelihood of success against Deville on its LUTPA claim against him.

### (c) Breach of Fiduciary Duties.

As an employee of Volt, Deville owed a fiduciary duty to the company to be loyal and faithful to Volt's interest in its business. *See Dufau v. Creole Eng'g, Inc.*, 465 So.2d 752, 758 (La. App. 5 Cir. 1985). Those fiduciary duties were not eliminated as a result of Deville's resignation from Volt. Indeed, his fiduciary obligations to Volt continued even after he quit. *See Brown & Root, Inc. v. LaBauve*, 219 F.Supp. 179, 180 (W.D. La. 1962).

In order to demonstrate a *prima facie* claim for breach by an employee of his fiduciary duties, Volt must demonstrate fraud, breach of trust, or an action outside the limits of the Deville's authority as an employee of Volt. *See Gerdes v. Estate of Cush*, 953 F.2d 201, 205 (5th Cir. 1992). Deville, a former management-level employee of Volt, surreptitiously accessed his work computer, without permission, for the purpose of taking computer files containing confidential business information of Volt with him to his new employer. Those actions by Deville obviously constitute a breach of the trust Volt placed in him, and were most certainly outside of the authority afforded him even as a division manager for the Company. Moreover, Volt believes that Deville started actively performing work on behalf of Shelton Energy before he quit Volt. In other words, Deville was a dual-agent, performing work to benefit Volt's direct competitor while still being paid by Volt. Accordingly, Volt has demonstrated that it has a likelihood of success against Deville on its claim for breach of fiduciary duties.

### 2. **<u>Volt has shown that it will suffer irreparable injury absent entry of a preliminary injunction.</u>**

"Irreparable harm" in a preliminary injunction proceeding refers to harm for which there is no adequate remedy at law. *See Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013). The party seeking a preliminary injunction must prove irreparable harm is likely, not merely possible. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Volt is not only threatened by irreparable harm by Deville's conduct as alleged in the Verified Complaint, it is currently experiencing it.

As shown in Volt's Verified Complaint, Deville misappropriated Volt's pricing information, information relating to work on client projects, and bid proposals. Deville is using that information to solicit Volt's clients, and to afford his new employer, Shelton Energy, with an unfair advantage in the marketplace. Once Volt loses a client, it is difficult, if not impossible to regain that relationship. Overall, an award of damages would be insufficient to remedy the loss of Volt's clients threatened by Deville's ongoing conduct. *See, Ferrero v. Associated Materials, Inc.*, 923 F.2d 1441, 1449 (11th Cir.1991) (citing *Spiegel v. Houston*, 636 F.2d 997 (5th Cir. 1981) for the proposition that the Fifth Circuit has ruled that a loss of customers constitutes "irreparable injury"). Accordingly, Volt has established that it is at substantial risk of irreparable injury due to the conduct of Deville as set forth in Volt's Verified Complaint. These two factors also weigh in favor of Volt's request for a preliminary injunction.

### 3. **<u>The threatened injury outweighs any damage that the injunction might cause defendant.</u>**

Deville will not be injured by an injunction that prevents him from violating the Agreement or from wrongfully possessing and using Volt's confidential and proprietary information. In other words, Deville does not have a legal basis to claim that he has a right to

possess or use Volt's property. On the other hand, the harm to Volt's business is substantial. Even if Deville were able to describe some inconvenience resulting from Volt's requested relief, that minimal inconvenience is far outweighed by the irreparable harm that Volt has and will continue to suffer, such as the loss of its customers. *See MedX Inc. of Florida v. Ranger*, 780 F.Supp 398, (E.D. La. 1991) (finding that impacts of preliminary injunction on individual involved in wrongful competition were outweighed by inadequacy of remedies for loss of company's clients resulting from that competition).

### 4. The balance of interests and the public interest also favor Volt.

Furthermore, the public interest would actually be promoted by the entry of a preliminary injunction under these circumstances, as that relief would promote the prevention of unfair competition between competitors. *See Helpful Hound, L.L.C. v. New Orleans Building Corp.*, 331 F.Supp.3d 581, 604 (E.D. La. 2018) (finding that public interest is promoted by preventing unfair competition). Accordingly, the balance of interests between the parties and the public interest factors favor entry of a preliminary injunction.

### 5. The preliminary injunction sought by Volt is narrowly tailored.

Although not a requirement for the entry of a preliminary injunction, it bears noting that Volt's requested relief is also reasonable and narrowly tailored to achieve the requested result. Volt asks the Court to take action only to the extent necessary to remediate Deville's possession and use of the Misappropriated Information by:

1. Prohibiting Deville's use or possession of the Misappropriated Information, and Requiring that Deville return to Volt any Misappropriated Information;
2. Requiring Deville to demonstrate, by verifiable forensic evidence, that Volt's information was not disseminated to any third party;
3. Permitting Volt to conduct an inspection of electronic devices and storage accounts, including cloud-based accounts, most likely to contain evidence of Deville's use/disclosure of the Misappropriated Information; and

4. Preventing Deville from wrongfully competing with Volt and soliciting Volt's clients as a result of his possession and use of the Misappropriated Information.

## IV. CONCLUSION

For all of these reasons, and to protect Volt from the ongoing irreparable harm that it is experiencing as a result of Deville's wrongful possession and use of the Misappropriated Information, Volt respectfully requests that the Court enter preliminary injunctive relief

**HAMMONDS, SILLS, ADKINS, GUICE, NOAH & PERKINS, LLP**

By: */s/ Jon Guice*
    Jon Guice - State Bar No. 20841
    Linda Ewbank - State Bar No.21584
    1881 Hudson Circle
    Monroe, LA 71201
    Telephone:  (318) 324 - 0101
    Facsimile:  (318) 322 - 5375
    jguice@hamsil.com

**EVERSHEDS SUTHERLAND (US) LLP**

By: */s/ John T. Hays*
    Scott R. McLaughlin (*pro hac vice forthcoming*)
    State Bar No. 00791234
    John T. Hays (*pro hac vice forthcoming*)
    State Bar. No. 24101885
    1001 Fannin, Suite 3700
    Houston, TX 77002
    Telephone: (713) 470-6100
    Facsimile: (713) 654-1301
    ScottMcLaughlin@eversheds-sutherland.us
    JohnHays@eversheds-sutherland.us

**ATTORNEYS FOR VOLT, LLC**

## CERTIFICATE OF SERVICE

    I hereby certify that on March 17, 2021, I caused to be electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to counsel of record.

*/s/ Jon K. Guice*