**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| **VOLT POWER, LLC** | ) | **Civil Action No. 1:21-cv-00395** |
| | ) | |
| **Plaintiff,** | ) | **District Judge David C. Joseph** |
| | ) | |
| **VERSUS** | ) | **Magistrate Judge Joseph Perez-Montes** |
| | ) | |
| **JAMES ERIC DEVILLE** | ) | **JURY DEMAND** |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY**
**INJUNCTION**

## TABLE OF CONTENTS

**TABLE OF CONTENTS** ............................................................................................................ **ii**

**TABLE OF AUTHORITIES** ...................................................................................................... **iii**

**I.     INTRODUCTION** .......................................................................................................... **1**

**II.    LEGAL STANDARD FOR INJUNCTIVE RELIEF** ..................................................... **3**

**III.   ARGUMENT** ................................................................................................................ **4**

  **A.  Volt cannot succeed on the merits of its Statutory claims** ................................................. **4**

  **B.  Volt cannot succeed on the merits of its Louisiana Unfair Trade Practices Act claim** **8**

  **C.  Volt cannot succeed on the merits of its breach of fiduciary duties claim** .................. **10**

  **D.  Volt cannot show immediate, irreparable injury absent a permanent injunction** .... **10**

  **E.  The potential damage to Mr. Deville by enjoining him from his livelihood greatly
      outweighs any threatened injury to Volt** ...................................................................... **12**

  **F.  Public interest clearly weighs in favor of Mr. Deville** .................................................. **13**

  **G.  Alternatively, the doctrine of unclean hands bars Volt from benefitting from its
      actions that were the subject matter of the Arkansas Litigation** ................................ **14**

  **H.  Alternatively, Volt's request for injunctive relief is impermissibly broad** ................. **14**

**IV.    CONCLUSION** ............................................................................................................ **15**

**CERTIFICATE OF SERVICE** .................................................................................................. **16**

# TABLE OF AUTHORITIES

**Cases**

*ABF Freight Sys., Inc. v. N.L.R.B.*,
    510 U.S. 317 (1994)......................................................................................................... 14

*Anderson v. Jackson*,
    556 F.3d 351 (5th Cir. 2009) ............................................................................................ 3

*Ashland Chemical, Inc. v. Lombardino*,
    No. 92-2434, 1993 WL 390147 (E.D. La. 9/23/93)........................................................... 8

*Canal Auth. v. Callaway*,
    489 F.2d 567 (5th Cir. 1974) ............................................................................................ 3

*Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*,
    2009-1633 (La. 4/23/10), 35 So. 3d 1053............................................................................ 9

*Clark v. Prichard*,
    812 F.2d 991 (5th Cir. 1987) ............................................................................................ 3

*Comput. Mgmt. Assis. Co. v. DeCastro, Inc.*,
    220 F.3d 396 (5th Cir. 2000) ....................................................................................... 4, 9

*Ferrellgas, L.P. v. McConathy*,
    No. 10-178, 2010 WL 101081 (W.D. La. 3/15/10) ........................................................... 8

*Foster Cable Servs., Inc. v. Deville*,
    368 F. Supp. 3d 1265 (W.D. Ark. 2019)...................................................................... 1, 2

*Gerdes v. Estate of Crush*,
    953 F.2d 201 (5th Cir. 1992) .......................................................................................... 10

*JJ Plank Co., LLC v. Bowman*,
    No. 18-0798, 2018 WL 4291751 (W.D. La. 9/7/18) ......................................... 5, 8, 10, 11

*Johnson Controls, Inc. v. Guidry*,
    724 F.Supp.2d 612 (W.D. La. 2010).............................................................................. 11

*Justin Inds., Inc. v. Choctaw Secs., L.P.*,
    920 F.2d 262 (5th Cir. 1990) .......................................................................................... 11

*L&B Transport, LLC v. Beech*,
    568 F. Supp. 2d 689 (M.D. La. 2008) ............................................................................... 13

*Legacy Church, Inc. v. Kunkel*,
    455 F. Supp. 3d 1100 (D.N.M. 2020) ................................................................................. 3

*Mississippi Power & Light Co. v. United Gas Pipe Line Co.*,
    760 F.2d 618 (5th Cir. 1985) ....................................................................................... 4, 12

*Mylan Institutional LLC v. Aurobinado Pharma Ltd.*,
    857 F.3d 858 (5th Cir. 2017) ............................................................................................. 3

*Nken v. Holder*,
    556 U.S. 418 (2009) .......................................................................................................... 3

*Pyramid Instrumentation & Elec. Corp. v. Hebert*,
    No. 17-1358, 2018 WL 1789325 (W.D. La. 3/14/18) .................................................... 5, 9

*Schenck v. Living Centers-East, Inc.*,
    917 F. Supp. 432 (E.D. La. 1996) ..................................................................................... 9

*Source Prod. & Equip. Co. v. Schehr*,
    No. 16-17528, 2017 WL 3721543 (E.D. La. 8/29/17) .................................................... 4, 5

*Sw. Airlines Co. v.Tex. Int'l Airlines, Inc.*,
    546 F.2d 84 (5th Cir. 1977) ............................................................................................. 15

*SWAT 24 Shreveport Bossier, Inc. v. Bond*,
    00-1695 (La. 6/29/01), 808 So.2d 294 ............................................................................ 13

*Texas v. Dep't of Lab.*,
    929 F.3d 205 (5th Cir. 2019) ........................................................................................... 15

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) .............................................................................................................. 4

**Statutes**

18 U.S.C. § 1836 *et seq.* .......................................................................................................... 4, 5

La. R.S. 23:921 ............................................................................................................... 11, 13

La. R.S. 51:1401 *et seq.* ........................................................................................................... 8

La. R.S. 51:1431 *et seq.* ............................................................................................................... 4, 5

**Rules**

Fed. R. Civ. P. 65 ......................................................................................................................... 14

*MAY IT PLEASE THE COURT:*

Defendant, James Eric Deville (hereafter, "Defendant" or "Mr. Deville"), did not take or "misappropriate" any proprietary information from Volt Power Company ("Volt"). Moreover, Volt, cannot meet its burden to prove the requisites for a preliminary injunction. Finally, Volt's request defies multiple public policy concerns and should not be granted. For these reasons and the law set forth below, this Court should deny Plaintiff's request for a preliminary injunction (R. Doc. 13) in its entirety, which is scheduled for hearing on April 21, 2021.

## I.    INTRODUCTION

Mr. Deville works in the electrical utilities industry and services joint-use contracts for customers—a specialized niche in this industry. Prior to his employment with Plaintiff, Volt Power, LLC ("Volt"), Mr. Deville was employed by Foster Cable Services, Inc. ("Foster Cable") in its joint-use division. On March 1, 2017, Mr. Deville left his employment with Foster Cable, bringing his joint-use knowledge with him to Volt, which did not have a joint-use division prior to Mr. Deville joining.

Nearly fifteen months after Mr. Deville left Foster Cable for Volt, on June 15, 2018, Foster Cable brought suit jointly against Mr. Deville and Volt (the "Arkansas Litigation"), alleging that Mr. Deville had breached a confidentiality agreement by disclosing potential client, pricing, and other proprietary information to Volt; that Volt had tortiously interfered with the confidentiality agreement; and conversion of proprietary information. *See Foster Cable Servs., Inc. v. Deville*, 368 F. Supp. 3d 1265 (W.D. Ark. 2019). Volt verbally offered to provide Mr. Deville representation through its attorneys, Baker Donelson Bearman Caldwell & Berkowitz, PC (collectively, "Baker Donelson"). As part of this offer of joint representation, Baker Donelson allegedly sent a letter to Mr. Deville ("Conflict Waiver Letter") dated July 23, 2018, explaining potential conflicts that may arise as a result of the joint representation. *See* R. Doc. 1-3. The

1

Conflict Waiver Letter improperly included a non-competition and non-solicitation of clients clause in favor of Volt, "conditioning" the joint representation and payment of attorney's fees on Mr. Deville agreeing to the terms of the non-compete and non-solicitation clause. *See* R. Doc. at p. 3.[1] The Arkansas Litigation ultimately concluded when the district court granted Mr. Deville and Volt's motion for judgment on the pleadings, finding that the confidentiality agreement between Mr. Deville and Foster Cable was unenforceable under Arkansas law, as it constituted an unreasonable and unlawful restraint of trade. *See id.*

After almost four years of working at Volt servicing joint-use contracts, on December 23, 2020, Mr. Deville resigned his employment. Subsequently, on or about January 4, 2021, Mr. Deville began work with Shelton Energy Solutions, LLC ("Shelton Energy"), obviously bringing with him his joint-use *personal* expertise. Shortly thereafter, Volt initiated this lawsuit against Mr. Deville, seeking preliminary and permanent injunctive relief prohibiting Mr. Deville from (1) working with his new employer, Shelton Energy; (2) soliciting Volt's clients; (3) using or possessing trade secrets that Mr. Deville allegedly misappropriated from Volt; and (4) to allow Volt to inspect Mr. Deville and Shelton Energy's electronic devices to determine the scope of the alleged misappropriated information.[2] As shown herein, Volt fails to show a likelihood of success on the merits for its causes of action against Mr. Deville. Moreover, these claims are

---

[1] The impropriety of folding a non-competition and non-solicitation agreement between an employer and employee into a conflict waiver letter between a lawyer and his client—where the latter operates as consideration for the former—is explained more fully in Defendant's pending Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim. *See* R. Doc. 7.

[2] Volt's Motion for Preliminary Injunction (R. Doc. 13) and proposed order (R. Doc. 13-2) contradict the scope of relief sought in the memorandum (R. Doc. 13-1) regarding the preliminary injunction. Specifically, the memorandum focuses on the "return" of the alleged proprietary information taken, while the motion and proposed order are much broader. In the conference call with the Court to schedule the preliminary injunction, Volt indicated that the main thrust of the preliminary injunction hearing corresponded with the memorandum's request for a return of "misappropriated" information.

unsubstantiated by any evidence and are made solely as a scare tactic to prevent an exodus of employees from Volt and as a display of power to Shelton Energy, Volt's newest competitor in the electrical utilities market.

## II.   LEGAL STANDARD FOR INJUNCTIVE RELIEF

"Injunctive relief is 'an extraordinary and drastic remedy,' and should only be granted when the movant has clearly carried the burden of persuasion." *Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir. 2009) (citations omitted). "Specifically, the movant must show: (1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest." *Id.* (citing *Canal Auth. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974)). Additionally, it is the movant that bears the cumulative burden of proving *each* of these four elements before injunctive relief may be granted. *See Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987).

"The likelihood-of-success and irreparable-harm factors are 'the most critical' in the analysis." *Legacy Church, Inc. v. Kunkel*, 455 F. Supp. 3d 1100, 1132 (D.N.M. 2020) (citing *Nken v. Holder*, 556 U.S. 418, 434 (2009)). To prove likelihood of success on the merits, the moving party must show that it will "likely prove" the merits of its claims. *Mylan Institutional LLC v. Aurobinado Pharma Ltd.*, 857 F.3d 858, 866 (5th Cir. 2017). The standard for proving irreparable injury is not a mere possibility, but a likelihood:

> Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is likely in the absence of an injunction. Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.

3

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (internal citations omitted).

The third part of the test requires the Court to balance the harm that would be suffered by Plaintiff if the injunction were denied against the possible harm that would result to the public if the injunction were granted. *See Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 626 (5th Cir. 1985). The fourth and final part of the test is whether granting the injunctive relief will disserve the public interest. *Id.* at 625-26.

## III.   ARGUMENT

### A.  Volt cannot succeed on the merits of its Statutory claims

Volt's claims under the Louisiana Uniform Trade Secrets Act ("LUTSA"), La. R.S. 51:1431 *et seq.*, and the federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq.*, fail, as Volt cannot show that Mr. Deville misappropriated trade secrets belonging to Volt. In order to succeed under either LUTSA or DTSA, a plaintiff must prove (1) the existence of a trade secret and (2) the misappropriation of the trade secret by another. *See Source Prod. & Equip. Co. v. Schehr*, No. 16-17528, 2017 WL 3721543 (E.D. La. 8/29/17) (citing *Comput. Mgmt. Assis. Co. v. DeCastro, Inc.*, 220 F.3d 396, 403 (5th Cir. 2000)). Under DTSA, a plaintiff must also prove the trade secret's relation to a good or service used or intended for use in interstate or foreign commerce. *Id*. at *2 (citing 18 U.S.C. § 1836(b)(1)).

"The definition of 'trade secret' provided by LUTSA is essentially identical to that provided by the DTSA," which includes "scientific and technical information that (1) derives independent economic value, real or potential, from not being generally known or readily ascertainable by others who can obtain economic value from the disclosure or use of the information and (2) is the subject of the owner's reasonable efforts to maintain its secrecy." *Source Prod. & Equip Co.*, 2017 WL 3721543, at *6; *see also Pyramid Instrumentation & Elec. Corp. v.*

*Hebert*, No. 17-1358, 2018 WL 1789325, at *3 (W.D. La. 3/14/18) (citing 18 U.S.C. § 1839(3)

and La. R.S. § 51:1431(4)).

LUTSA and DTSA also define "misappropriation" in the same manner, to mean:

(A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(B) disclosure or use of a trade secret of another without express or implied consent by a person who—

(i) used improper means to acquire knowledge of the trade secret;
(ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was--

(I) derived from or through a person who had used improper means to acquire the trade secret;

(II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or

(III) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret; or

(iii) before a material change of the position of the person, knew or had reason to know that--

(I) the trade secret was a trade secret; and

(II) knowledge of the trade secret had been acquired by accident or mistake

*See Source Prod. & Equip Co.*, 2017 WL 3721543, at *6 (citing 18 U.S.C. § 1839(5)). Further,

"the burden is on the obligee to establish both the existence of a legally protectable secret and a

legal basis upon which to predicate relief." *JJ Plank Co., LLC v. Bowman*, No. 18-0798, 2018 WL

4291751, at *7 (W.D. La. 9/7/18) (internal quotations and citations omitted).

Here, Volt alleges that Mr. Deville misappropriated its trade secrets by transferring files

containing Volt's *confidential* and *proprietary* information from Mr. Deville's Volt computer to a

USB thumb drive shortly before leaving to work with Shelton Energy. The list of "trade secrets" that Volt claims Mr. Deville downloaded to a USB Drive (and therefore, they assume he "misappropriated") are as follows:

(1) "F: Eric's Personal;"

(2) "F:\Tony's Information;"

(3) "000093-Oct2019-Pricesheet.xlsx;"

(4) "T&D Legal Agreement.pdf;"

(5) "Oncor Joint Use bid_financials_sfs.xlsx;"

(6) "References for Oncor.olsx;"

(7) "Cleco New Attachment and Pole counts Nov 2020.xlsx;" and

(8) "TomBigBee Attachment Audit.zip."[3]

Most notably, none of these files are trade secrets. Moreover, Mr. Deville adamantly denies that he took any of these documents to Shelton Energy, as Volt incorrectly contends.

The folder "Eric's Personal" contained Mr. Deville's personal tax information, which is neither the property or proprietary information of Volt, and is thus not a trade secret under LUTSA or DTSA. Likewise, the file name "T&D Legal Agreement.pdf" is simply a letter from T&D Solutions f/k/a Volt to Mr. Deville dated April 11, 2018 regarding an "Acknowledgment and Disclosure of Continuing Obligations," the purpose of which was to inform employees of T&D Solutions f/k/a Volt's general employment policies. Nothing in this acknowledgment letter, which

---

[3] Volt's answers to discovery infer that there may be more documents taken, but these are the documents that Volt's third-party vendor identified as downloaded from Mr. Deville's computer to USB drives in December of 2020. As Mr. Deville left the Volt computer at Volt's office, only Volt has access to the data and email that Mr. Deville had access to prior to Mr. Deville's departure from Volt. Thus, Volt's inference of additional data proves that it cannot substantiate any "loss" other than these documents which were saved to a USB drive.

was allegedly signed by Mr. Deville, meets the definition of a trade secret or is otherwise confidential, proprietary information of Volt.

The folder "Tony's Information" contained Entergy maps of power grids, which can be downloaded from Entergy's website by any approved contractor. Mr. Deville obtained his username and login information from Entergy nearly ten years ago, well before his employment with Volt. In other words, he had access to these same maps before he began working with Volt, during his employment with Volt, and still today, as his username with Entergy is specific to Mr. Deville, not his employer. Further, maps provided by Entergy to any approved contractor clearly do not meet the definition of a trade secret belonging to Volt under LUTSA and DTSA.

Likewise, the "Cleco New Attachment and Pole counts Nov 2020.xlsx" and "TomBigBee Attachment Audit.zip" are not Volt's "propriety" information. The former indicates information regarding the number of permits sent to Cleco and number of attachments on Cleco's poles and the latter identifies Tom BigBee's poles and locations in Alabama. Obviously, neither "belong" to Volt and neither represent any trade secret information for Volt. Oncor is a company that Volt made a bid for, but never entered into a contract for services.

Before Mr. Deville left Volt, he provided the Cleco files and the TomBigBee attachments on a USB drive to fellow Volt employee, Jessica Fuqua, in the ordinary course of employment with Volt. Even if these files contain Volt's sensitive information, which is denied, Mr. Deville certainly did not take, use, or disclose this information through "improper means," as required by the statutes. Volt has failed to set forth any proof otherwise; but rather, Volt simply relies on the blanket assertion that because the files were downloaded to a USB drive, Volt should be allowed to search all of Shelton Energy's systems for such information. Volt simply has no evidence that

7

Mr. Deville took any documents or files, in hard copy or electronic format, let alone any evidence that Mr. Deville disclosed any trade secrets to Shelton Energy.

Finally, any knowledge or expertise that Mr. Deville acquired while at Volt and took to Shelton Energy is not protected under LUTSA or DTSA, especially considering Mr. Deville brought his joint-use expertise to Volt in the first place. *See JJ Plank Co.,* LLC, 2018 WL 4291751, at *9 (denying employer's request for preliminary injunction against former employee for alleged violations under LUTSA and DTSA, finding that trade secrets were not misappropriated and "[t]he law permits [the employee] to use his memory, experience, skills, even those developed during his former employment, in his new position"); *see also Ferrellgas, L.P. v. McConathy*, No. 10-178, 2010 WL 101081, at *8 (W.D. La. 3/15/10) ("Moreover, the expertise and knowledge acquired by [former employee] is not protected under the LUTSA. Louisiana courts have repeatedly emphasized that a former employee who enters business in competition with his former employer necessarily utilizes the experience he acquired and the skills he developed while in a former employment.") (internal quotations and citations omitted); *see also Ashland Chemical, Inc. v. Lombardino*, No. 92-2434, 1993 WL 390147, at *4 (E.D. La. 9/23/93) ("Clearly, a former employee is allowed to rely on his memory or general knowledge and skill gained in his former employment without violating a nondisclosure covenant.") (internal quotations and citations omitted).

In sum, Volt cannot succeed on the merits of its LUTSA or DTSA claims, as the files that Volt claims Mr. Deville took were neither (1) trade secrets nor (2)  misappropriated; therefore, Volt is not entitled to injunctive relief on these claims.

### B.  Volt cannot succeed on the merits of its Louisiana Unfair Trade Practices Act claim

To prevail on the merits of a Louisiana Unfair Trade Practices Act ("LUTPA") claim, La. R.S. 51:1401 *et seq.*, a plaintiff must prove fraud, misrepresentation or other unethical conduct.

*See Computer Mgmt. Assistance Co. v. Robert F. DeCastro, Inc.*, 220 F.3d 396, 404 (5th Cir. 2000) (citing *Schenck v. Living Centers-East, Inc.*, 917 F. Supp. 432, 439 (E.D. La. 1996)). "A trade practice is unfair under the statute only when it offends established public policy and is immoral, unethical, oppressive or unscrupulous." *Id.* "Courts decide on a case-by-case basis what conduct falls within the statute's prohibition, and the Louisiana Supreme Court acknowledges that the range of prohibited practices under LUTPA 'is extremely narrow.'" *Pyramid Instrumentation & Electric Corp.*, 2018 WL 1789325, at \*4 (quoting *Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*, 2009-1633 (La. 4/23/10), 35 So. 3d 1053, 1060). Additionally, "LUTPA is not simply an alternative remedy for a breach of contract claim" and "instead extends only to egregious behavior or cases in which the breach involves deceptive and unethical undertones." *Id.* (quotations and citations omitted).

Volt again blanketly asserts that Mr. Deville engaged in an elaborate scheme as a "dual agent," misappropriating Volt's trade secrets for Shelton Energy, and is thus guilty of a LUTPA violation. *See.* R. Doc. 13-1 at p. 6. Volt has failed to put forth any evidence whatsoever showing that Mr. Deville misappropriated Volt's trade secrets and is using them at Shelton Energy. Volt cannot show that Mr. Deville engaged in unethical conduct by blanket allegations of misconduct with no evidence to substantiate its claims. Also, changing jobs and going to work for a competitor does not rise to the level of a LUTPA violation. Further, Mr. Deville did not quit abruptly, as Volt contends. Mr. Deville gave Volt notice of his intent to leave Volt. On January 4, 2021, two days before the end of the notice period, Mr. Deville left his employment with Volt. Not providing  a two-week-notice period does not rise to the level of a LUTPA violation either. Even if Mr. Deville had simply resigned effective immediately, that does not give rise to a LUTPA violation.

As referenced above, Volt cannot establish that Mr. Deville misappropriated any of Volt's trade secrets or was working as a "dual agent." Because Volt has failed to establish this main requisite, or any other unethical behavior, it cannot succeed on the merits of its LUTPA claim and should be denied injunctive relief.[4]

### C.  Volt cannot succeed on the merits of its breach of fiduciary duties claim

Volt seeks injunctive relief based on Mr. Deville's alleged breach of fiduciary obligations to Volt, relying on the same contention that Mr. Deville was a "dual-agent" for Shelton Energy while still employed at Volt and was misappropriating Volt's trade secrets on behalf of Shelton Energy. To prevail on a claim for breach of fiduciary duties, Volt must show "proof of fraud, breach of trust, or an action outside the limits of the fiduciary's authority." *Gerdes v. Estate of Crush*, 953 F.2d 201, 205 (5th Cir. 1992).[5] Again, Volt has failed to put forth any evidence whatsoever that Mr. Deville was a dual-agent that misappropriated its trade secrets on behalf of Shelton Energy. Volt has failed to prove a likelihood of success on the merits for this claim—far from it.

### D.  Volt cannot show immediate, irreparable injury absent a permanent injunction

Volt has failed to establish that irreparable injury will occur if the preliminary injunction does not issue. A plaintiff seeking a preliminary injunction "must show that irreparable injury will occur 'during the pendency of the litigation' unless the preliminary injunction issues." *JJ Plank Co., LLC*, 2018 WL 4291751, at *9 (quoting *Justin Inds., Inc. v. Choctaw Secs., L.P.*, 920 F.2d

---

[4] In its Complaint, Volt alleges a cause of action for fraud. *See* R. Doc. 1 at pp. 28-30. This cause of action is not mentioned or briefed in Volt's Motion for Preliminary Injunction and is not before the Court on the preliminary injunction. Therefore, Volt's cause of action for fraud should not be considered in analyzing the merits of Volt's LUTPA claim.

[5] Likewise, fraud is not before the Court on Volt's Motion for Preliminary Injunction.

262, 268 n. 7 (5th Cir. 1990)). "In order for a harm to be considered irreparable for purposes of issuing a preliminary injunction, monetary damages must be inadequate to redress it." *Id.*

Volt improperly contends that Mr. Deville's misappropriation of trade secrets and potential loss of joint-use clients to Shelton Energy establishes irreparable injury. *See* R. Doc. 13-1 at 8. Yet, "[s]imply arguing that a company is losing customers and goodwill without showing that monetary damages are an inadequate remedy is insufficient to establish irreparable harm." *Johnson Controls, Inc. v. Guidry*, 724 F.Supp.2d 612, 620 (W.D. La. 2010). This Court's decision in *JJ Plank Co., LLC* is particularly informative, where the plaintiff/employer brought a similar action for injunctive relief against its former employee based on alleged violations of a non-competition and non-solicitation agreement, LUTSA, and DTSA. 2018 WL 4291751, at *9. The Court found the non-competition and non-solicitation agreement to be invalid, as it did not strictly comply with the provisions of La. R.S. 23:921(C), and further found that the employee did not misappropriate trade secrets, as the employer failed to put forth any evidence showing the employee had actually taken any documents or files or disclosed trade secrets to his new employer. *Id.* at *6-9. Thus, the Court reasoned that because the employer had failed to prove that its trade secrets had been taken, much less used, the employer could not show irreparable harm. *Id.* at *9. The Court also pointed out that mere speculation about the loss of future business from the misappropriation of trade secrets and confidential information was not sufficient for the issuance of a preliminary injunction, and that the employer would have the opportunity to prove any damages it suffered from loss of business if it proved its case on the merits, as the employer had put forth no evidence that such damages would be difficult to calculate. *Id.*

Just like in *JJ Plank Co., LLC*, Volt has failed to put forth any evidence whatsoever that Mr. Deville took confidential information, and much less used it, during his employment with

Shelton. Volt simply cannot show irreparable harm will occur to it absent a preliminary injunction, and its blanket assertion that an award of damages is insufficient and it could lose customers is not enough to establish irreparable harm. Because Volt has failed to show that its trade secrets have been misappropriated, or that monetary damages are inadequate to compensate for such misappropriation, Volt is not entitled to a preliminary injunction.

### E.   The potential damage to Mr. Deville by enjoining him from his livelihood greatly outweighs any threatened injury to Volt

Before issuing an injunction, a court must balance the harm that would be suffered by the plaintiff if the preliminary injunction were denied against the possible harm that would result to the defendant if the injunction were granted. *See Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 626 (5th Cir. 1985). Volt offers little argument on this element, dismissively contending that the issuance of injunctive relief will merely cause "some minimal inconvenience" to Mr. Deville, but because Volt's business is substantial, it will somehow suffer greater harm. As set forth above, Volt has put forth no evidence showing that Mr. Deville misappropriated Volt's trade secrets other than conclusory allegations.

Enjoining Mr. Deville from engaging in his livelihood—servicing joint-use contracts—and earning a living pending a trial on the merits based on an unenforceable non-competition and non-solicitation agreement (which only prohibits the solicitation of clients, not employees) would be economically devastating for Mr. Deville. And like Volt contends, its business is substantial. A loss of any revenue and customers will inevitably have some impact on Volt's operations, but the balance of harm tips in favor of denying the injunction because the harm threatened to Mr. Deville—one employee—is greater than any speculative harm that might be suffered by Volt—a substantial business. *See Mississippi Light Co.*, 760 F.2d at 626 (finding the balance of harm tipped in favor of granting an injunction, as any loss of revenue to defendant would inevitably have some

impact on its operations, but the projection of harm to defendant was less than any harm to plaintiff given the healthy state of defendant's company).

### F.  Public interest clearly weighs in favor of Mr. Deville

Volt's vague assertion that the public interest would be promoted by the issuance of a preliminary injunction in order to prevent the unfair competition between competitors (*see* R. Doc. 13-1 at 9) stands in direct contradiction to settled law. "Louisiana has long had a strong public policy disfavoring noncompetition agreements between employers and employees." *SWAT 24 Shreveport Bossier, Inc. v. Bond*, 00-1695 (La. 6/29/01), 808 So.2d 294. This "strong public policy" is set codified in La. R.S. 23:921(A)(1), which states, in part:

> Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void.

La. R.S. 23:921(C) creates a limited exception to the rule against non-competition and non-solicitation agreements, providing that an "employee may agree with his employer" not to compete or solicit customers within specified parishes for no more than two years from termination of employment. *Id.* "Louisiana's approach to non-competition agreements **requires mechanical adherence**" to the statute. *L&B Transport, LLC v. Beech*, 568 F. Supp. 2d 689, 693 (M.D. La. 2008) (internal quotations and citation omitted) (emphasis added).

As set forth in substantial detail in the pending Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim (R. Doc. 7), the non-competition and non-solicitation agreement between Mr. Deville and Volt is invalid and unenforceable, as it does not "mechanically adhere" to the statute. Rather, this "agreement" is contained in the Conflict Waiver Letter between Mr. Deville and his attorney, Baker Donelson. This attempt to leverage a non-competition and non-solicitation agreement into a joint defense agreement via an attorney conflict letter runs head-long into two competing public policies: (1) Public policy disfavoring noncompetition agreements, and (2)

13

Public policy requiring conflict-free representation by attorneys. Furthermore, public policy disfavors the issuance of an injunction based on blanket assertions and conclusory statements, no matter how vehemently stated.

### G. Alternatively, the doctrine of unclean hands bars Volt from benefitting from its actions that were the subject matter of the Arkansas Litigation

"The unclean hands doctrine closes the door of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief." *ABF Freight Sys., Inc. v. N.L.R.B.*, 510 U.S. 317, 329-30 (1994). Volt defended the Arkansas Litigation by successfully arguing that its conduct in hiring Mr. Deville was not tortious. The shoe is now on the other foot. Here, Volt argues that Mr. Deville acted tortiously when leaving Volt for employment with a competitor. At a minimum, this contradiction appears to represent unclean hands.

### H. Alternatively, Volt's request for injunctive relief is impermissibly broad

If Volt were to show a likelihood of success on the merits (which it cannot) and injunctive relief to be appropriate (which it is not), Volt seeks to conduct an inspection of all electronic devices and storage accounts, including cloud-based accounts, most likely to contain evidence of Mr. Deville's use and disclosure of the misappropriated trade secrets. *See* R. Doc. 13-1 at p. 9. To the extent that this request seeks to inspect any electronic devices and storage accounts that are not the property of Mr. Deville, including any that are the property of Shelton Energy, it should be denied.

Fed. R. Civ. P. 65(d)(2) provides that an injunction "order binds only the following who receive actual notice of it by personal service or otherwise: (A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B)." An injunction may only be enforced against a nonparty who is in privity with the enjoined party. *See Texas v. Dep't of Lab.*,

14

929 F.3d 205, 211 (5th Cir. 2019) (internal quotations and citation omitted). "For privity, federal courts have deemed three types of relationships sufficiently close to justify preclusion: (1) a non-party who has succeeded to a party's interest in property, (2) a non-party who controlled the original suit, and (3) a non-party whose interests were represented adequately by a party in the original suit." *Id.* (quoting *Sw. Airlines Co. v.Tex. Int'l Airlines, Inc.*, 546 F.2d 84, 85 (5th Cir. 1977) (internal quotations omitted)).

Here, Shelton Energy, a non-party to this suit, is clearly not in privity with Mr. Deville, as it has not succeeded to Mr. Deville's interests, does not control the instant litigation, and its interests are not represented in this litigation. Therefore, an injunction should not issue as to Shelton Energy.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Defendant respectfully requests that this Court deny Plaintiff's requests for a preliminary and permanent injunction and dismiss Plaintiff's claims for injunctive relief with prejudice.

Respectfully submitted,

FAIRCLOTH MELTON SOBEL & BASH, LLC

By:   */s/ Jimmy R. Faircloth, Jr.*
Jimmy R. Faircloth, Jr. (T.A.) (La. #20645)
jfaircloth@fairclothlaw.com
Lottie L. Bash (La. #26186)
lbash@fairclothlaw.com
Laura Beth Matthews (La. #33862)
lmatthews@fairclothlaw.com
Mary Katherine Price (La. #38576)
kprice@fairclothlaw.com
Christopher Chesne (#38696)
cchesne@fairclothlaw.com
105 Yorktown Drive
Alexandria, LA 71303

15

Phone: (318) 619-7755
Fax: (318) 619-7744

**ATTORNEYS FOR**
**JAMES ERIC DEVILLE**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I presented the above and foregoing *Defendant's Opposition to*

*Plaintiff's Motion for Preliminary Injunction* for filing and uploading to the CM/ECF system

which will send electronic notification of such filing to all counsel of record.

Alexandria, Louisiana, this 7th day of April, 2021.

    /s/ Jimmy R. Faircloth, Jr.
OF COUNSEL

16