# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF LOUISIANA
# ALEXANDRIA DIVISION

| | |
|---|---|
| **VOLT POWER, LLC** | **CIVIL ACTION NO. 1:21-CV-00395** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **JAMES ERIC DEVILLE** | **MAGISTRATE JUDGE JOSEPH PEREZ-MONTES** |

## MEMORANDUM RULING

Before the Court is a Motion for Partial Dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion") filed by Defendant, James Eric Deville ("Deville"). [Doc. 7]. For reasons which follow, the Motion is DENIED.

### BACKGROUND

Plaintiff, Volt Power, LLC ("Volt Power"), is a company that provides services to power companies, such as performing safety audits, conducting post-storm equipment assessments, and providing assistance with government permitting. [Doc. 1 ¶¶ 13, 15]. Volt Power hired Deville on March 5, 2018 as manager of its Joint Use Division. [*Id.* ¶ 22]. Months later, in June of 2018, Deville's previous employer, Foster Cable Services, Inc. ("Foster Cable"), filed suit against both Deville and Volt Power's predecessor in interest, T&D Solutions, LLC (hereinafter referred to as Volt Power), in Arkansas state court (the "Arkansas Litigation").[1] [Doc. 1-3]. In the Arkansas Litigation, Foster Cable sought recovery for breach of a confidentiality agreement

---

[1] This action was subsequently removed to and adjudicated in the United States Court for the Western District of Arkansas. *See Foster Cable Servs., Inc. v. Deville*, 368 F. Supp. 3d 1265 (W.D. Ark. 2019).

1

based on Deville's alleged disclosure of protected information to Volt Power. *See Foster Cable Servs., Inc. v. Deville*, 368 F. Supp. 3d 1265 (W.D. Ark. 2019).

The law firm of Baker, Donelson, Bearman, Caldwell, & Berkowitz, PC ("Baker Donelson") served as counsel for both Volt Power and Deville in the Arkansas Litigation by virtue of a joint representation agreement (the "Joint Representation Agreement" or "Agreement").[2] [*Id.*]. This Agreement was memorialized in a letter dated July 23, 2018 and addressed to Deville from Phyllis G. Cancienne ("Ms. Cancienne"), the Baker Donelson attorney representing Volt Power. [Doc. 1-3]. The introductory paragraph of the Joint Representation Agreement stated the following:

> …the purpose of this letter is two-fold: First, to formally confirm that Volt has agreed to bear the fees and expenses of our firm to represent you in this lawsuit (subject to the conditions stated below). Second, I am writing to advise you of the consequences of any conflict of interest between you and Volt, which, although unexpected, might arise in the future

[*Id.* p. 1].

The present litigation concerns the enforceability of certain provisions in the Agreement with respect to its first articulated purpose. Specifically, the Joint Representation Agreement imposes on Deville covenants not to compete and not to solicit "as consideration for Volt's payment of the joint representation expenses," stating in relevant part:

---

[2] The Joint Representation Agreement is attached as Exhibit 2 to Volt Power's Complaint. According to Federal Rule of Civil Procedure 10(c), a copy of a written instrument that is an exhibit to a pleading comprises part of the pleadings for all purposes. Thus, the Court will regard the Joint Representation Agreement as part of the Complaint in resolving this Motion. *See U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 375 (5th Cir. 2004) (holding that a district court may consider exhibits attached to the complaint as part of the complaint for purposes of a Rule 12(b)(6) motion).

> … you agree that, during your employment with Volt, and in the event your employment with Volt terminates for any reason, for a one-year period following your termination/resignation, you will not, directly or indirectly, on behalf of yourself or any other person or business, call on, solicit, take away or cause the loss of any client of Volt in any of the Louisiana parishes listed on attached Exhibit A, and with whom you became acquainted or assisted during your employment. You also agree that, for the same time period as above, you will not, directly or indirectly, on behalf of yourself or on behalf of another person or business, open, operate, carry on, engage in, be employed by, invest in, or provide consulting services to any other business or operation similar to that conducted by Volt, including, but not limited to, providing utility inspection, transmission, distribution, and substation services in any of the Louisiana parishes listed on Exhibit A.

[*Id.* p. 2]. Attached to the Agreement is Exhibit A, which lists all of Louisiana's 64 parishes as encompassed in the restrictive covenants. [*Id.* p. 5]. The stipulated remedy for violations of the covenants is set forth in the following manner: "It is expressly agreed and understood that the remedy at law for breach of your above agreement not to solicit Volt's clients or to compete with Volt is inadequate and that injunctive relief shall be available to prevent your breach of that agreement." [*Id.* pp. 2–3].

The last page of the Agreement is a document titled "Authorization," which is largely comprised of provisions indicating that the undersigned understands the risks inherent in joint representation. [*Id.* p. 4]. The final provision states: "I further understand and agree to the conditions imposed upon me by Volt in return for its promise to pay the expenses associated with my joint representation in the above-referenced matter." [*Id.*]. The Arkansas Litigation concluded on February 20, 2019. *See Foster Cable Servs., Inc. v. Deville*, 368 F. Supp. 3d 1265 (W.D. Ark. 2019).

On December 23, 2020, Volt Power claims that Deville unexpectedly gave two-weeks' notice of resignation and thereafter immediately began working for a competitor, Shelton Energy Solutions, LLC ("Shelton Energy"). [Doc. 1 ¶¶ 30, 33]. The Complaint alleges that, prior to his resignation, Deville: (i) solicited employees in the Joint Use Division to leave the company and work for Shelton Energy; (ii) used at least two portable storage drives to access and misappropriate several files on his work computer that contained proprietary and confidential information of Volt Power; (iii) engaged in a fraudulent billing scheme to obtain a higher revenue bonus; and (iv) attempted to solicit at least one of Volt Power's clients to become a client of Shelton Energy. [*Id.* ¶¶ 8, 9, 10, 11].

On February 15, 2021, Volt Power filed this lawsuit against Deville and asserts nine causes of action: violation of the Defend Trade Secrets Act (DTSA), specific performance, breach of contract, violation of the Louisiana Uniform Trade Secrets Act (LUTSA), violation of the Louisiana Unfair Trade Practices Act (LUTPA), unjust enrichment, breach of fiduciary duties, fraud, and injunctive relief. [Doc. 1]. Volt Power also filed a Motion for Entry of Preliminary Injunction on March 17, 2021, which is set for evidentiary hearing on April 21, 2021.

Currently pending before the Court is a Motion for Partial Dismissal ("the Motion") filed by Deville on March 12, 2021. [Doc. 7]. In the Motion, Deville seeks dismissal of Volt Power's claims for specific performance, breach of contract, and violation of LUTPA on the ground that these three causes of action hinge on invalid and unenforceable non-competition and non-solicitation agreements. [*Id.*]. Volt Power

4

filed an Opposition on April 2, 2021 [Doc. 19], to which Deville replied [Doc. 21]. The Motion is now ripe for ruling.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move for dismissal of a plaintiff's claims before filing its answer when the pleadings, on their face, fail "to state a claim upon which relief can be granted." A pleading states a claim for relief when, *inter alia*, it contains "a short and plain statement … showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it contains sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility requires more than just the "sheer possibility" that a defendant acted unlawfully; it calls for enough facts "to raise a reasonable expectation that discovery will reveal evidence" to support the elements of the claim. *Twombly*, 550 U.S. at 556. Although the Rule 8 pleading standard does not require "detailed factual allegations," mere "labels and conclusions," or "a formulaic recitation of the elements of a cause of action" do not suffice. *Id.* at 555.

In ruling on a Rule 12(b)(6) motion, a court may rely on the complaint, its attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551

5

U.S. 308, 322 (2007)). A court must accept as true all factual allegations, although the same presumption does not extend to legal conclusions. *Iqbal*, 556 U.S. at 678. In sum, if the factual allegations asserted in the complaint are wholly speculative or if it is apparent from the face of the complaint that there is an absolute bar to recovery, the claim should be dismissed. *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955.

## LAW AND ANALYSIS

Volt Power bases its claims for specific performance, breach of contract, and LUTPA on the Joint Representation Agreement whereby Deville agreed to certain conditions in exchange for Volt Power's payment of his legal expenses in the Arkansas Litigation. Specifically, Volt Power maintains that Deville agreed to non-competition and non-solicitation covenants and that he has violated those covenants. Deville challenges the validity and enforceability of the covenants on two grounds. First, he maintains that the covenants do not mechanically comply with Louisiana's statutory requirements. Second, he argues that public policy prohibits the insertion of restrictive covenants into an informed consent letter pertaining to joint representation.

It is well-established that non-competition and non-solicitation agreements are disfavored in Louisiana and must be narrowly and strictly construed against the party seeking enforcement. *Brock Servs., L.L.C. v. Rogillio*, 936 F.3d 290, 296 (5th Cir. 2019); *SWAT 24 Shreveport Bossier, Inc. v. Bond*, 2000-1695, p. 4 (La. 6/29/01); 808 So.2d 294, 298. Louisiana Revised Statutes § 23:921, which governs restrictive covenants, provides that "[e]very contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of

6

any kind, except as provided in this Section, shall be null and void. However, every contract or agreement, or provision thereof, which meets the exceptions as provided in this Section, shall be enforceable." La. Stat. Ann. § 23:921(A)(1). § 23:921(C) contains the exceptions that are pertinent to this matter:

> [a]ny person ... may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment.

Significantly, Louisiana law requires "mechanical adherence" to the statutory requirements of § 23:921, especially with respect to the geographical and time limitations. *L & B Transp., LLC v. Beech*, 568 F. Supp. 2d 689, 693 (M.D. La. 2008) (quoting *Sentilles Optical Services v. Phillips*, 26,594 (La. App. 2nd Cir. 1995), 651 So.2d 395, 399).

Deville argues that the covenants at issue do not mechanically adhere to § 23:921(C) because the non-competition and non-solicitation provisions are embedded into the Joint Representation Agreement, which was executed by Ms. Cancienne and Deville, but not explicitly by Volt Power.[3] Because there was no direct agreement between Volt Power and himself, Deville submits that the Agreement falls short of

---

[3] The Court finds that the Joint Representation Agreement purports to both: (i) provide informed consent to Deville pursuant to Louisiana Rule of Professional Conduct 1.7 of potential conflicts of interest that may arise in the context of joint representation; and (ii) bind Volt Power and Deville to an agreement whereby Volt Power agreed to pay Deville's legal fees stemming from the Arkansas Litigation in exchange for, among other things, Deville agreeing to the incorporated non-competition and non-solicitation covenants. Notably, the terms of the Joint Representation Agreement make it clear that Baker Donelson was representing only Volt Power at the time of the Agreement's execution and was acting on behalf of Volt Power in executing the Agreement.

the "mechanical adherence" required by the statute. The Court finds no legal support for this position.

According to the Louisiana Supreme Court, the purpose of the state's strong policy of severely restricting non-competition agreements is "to prevent an individual from contractually depriving himself of the ability to support himself and consequently becoming a public burden." *SWAT 24 Shreveport Bossier, Inc. v. Bond*, 2000-1695, p. 5 (La. 6/29/01); 808 So.2d 294, 298. The likelihood of an individual becoming a public burden is heightened when his restrictive covenant is overly broad in terms of duration and geographical scope. *See Southeastrans, Inc. v. Landry*, 20-CV-00086, 2021 WL 972098, at *4 (W.D. La. Mar. 15, 2021); *Traffic Jam Events, LLC v. William Lilley, Lilley Consulting, Inc., and Ty Prestwood*, 2:21-CV-122, 2021 WL 1226409, at *3 (E.D. La. Apr. 1, 2021); *L & B Transp., LLC v. Beech*, 568 F. Supp.2d 689, 693 (M.D. La. 2008) (quoting *Sentilles Optical Services v. Phillips*, 26,594 (La. App. 2nd Cir. 1995), 651 So.2d 395, 399). In light of this public policy, "mechanical adherence" principally concerns the compliance of non-competition and non-solicitation agreements with § 23:921(C)'s substantive requirements – particularly, the time and geographical limitations.

Here, the Court finds that the non-competition and non-solicitation provisions do not, from the face of the pleadings, fail the "mechanical adherence" standard required by § 23:921(C), notwithstanding their placement into an informed consent letter. In this regard, § 23:921(C) states that, "every contract or agreement, *or provision thereof*" that complies with the statutory requirements governing

8

restrictive covenants is enforceable. La. Rev. Stat. Ann. § 23:921(A) (emphasis added). An agreement between Volt Power – through its attorney, Ms. Cancienne – and Deville is facially evident from the relevant terms of the Joint Representation Agreement. Accordingly, the form of the non-competition and non-solicitation covenants at issue does not preclude its enforcement as a matter of law.

Alternatively, Deville argues that public policy does not support the use of informed consent letters for purposes other than those contemplated by Louisiana Rule of Professional Conduct 1.7.[4] In this sense, the defendant likens informed consent letters to the policy objectives of the attorney-client privilege, *i.e.*, that they are "designed to promote full disclosure from the client to his attorney as to all relevant facts and information related to the subject matter of the representation." *See State v. Green*, 493 So. 2d 1178, 180 (La. 1986). However, here Ms. Cancienne has complied with her obligations under Rule 1.7 by explaining the fundamentals of informed consent, including the risks and consequences of waiving attorney-client privilege, and by obtaining Deville's written consent to joint representation. Without more, the Court cannot determine that there is a public policy concern that precludes the inclusion of covenants not to compete and not to solicit within an informed consent letter.

Deville has not otherwise informed the Court, and the Court is not aware, of any legal authority indicating that informed consent must be set forth and agreed to

---

[4] Rule 1.7 enables an attorney to represent a client notwithstanding the existence of a concurrent conflict of interest if, among other requirements, he gives the affected client informed consent, confirmed in writing.

in a stand-alone document. Though the Court acknowledges that there is often power disparity inherent in a law firm's joint representation of employer and employee, the Joint Representation Agreement specifically encouraged Deville to seek the advice of independent counsel prior to consenting to the Agreement. Moreover, Deville signed an Authorization affirming that "[he] … reviewed the above correspondence, and … had the opportunity to consult independent counsel." At this stage, the Court concludes that Volt Power has alleged sufficient facts to support plausible causes of action for specific performance, breach of contract, and violations of LUTPA based on the non-competition and non-solicitation provisions of the Agreement.

Should discovery in this matter reveal evidence bearing upon the contractual validity of the Joint Representation Agreement, any resulting issues may be appropriately raised at a later stage of the litigation.

## Conclusion

For the foregoing reasons, the Court DENIES the Motion.

THUS, DONE AND SIGNED in Chambers on this 20th day of April, 2021.

*David C Joseph*
DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE