UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| **VOLT POWER, LLC** | **CIVIL ACTION NO. 1:21-CV-00395** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **JAMES ERIC DEVILLE** | **MAGISTRATE JUDGE JOSEPH PEREZ-MONTES** |

**MEMORANDUM ORDER**

Before the Court is a MOTION FOR ENTRY OF PRELIMINARY INJUNCTION (the "Motion") [Doc. 13] filed by Plaintiff, Volt Power, LLC ("Volt Power"). A hearing on the Motion was held on April 21, 2021. For the following reasons, the Motion is GRANTED IN PART and DENIED IN PART.

**BACKGROUND**

Volt Power is a company that provides services to power companies, such as performing safety audits, conducting post-storm equipment assessments, and providing assistance with government permitting. [Doc. 1 ¶¶ 13, 15]. On March 5, 2018, Volt Power hired Defendant, James Eric Deville ("Deville"), as its Division Manager of Joint Use. [*Id.* ¶ 22]. However, Deville's employment with Volt Power was short-lived. On December 23, 2020, Deville unexpectedly gave Volt Power two-weeks' notice of resignation and thereafter immediately began working for a competitor, Shelton Energy Solutions, LLC ("Shelton Energy"), in its Joint Use Division. [*Id.* ¶¶ 30, 33].

On February 15, 2021, Volt Power filed a Verified Complaint and Request for Preliminary and Permanent Injunctive Relief (the "Complaint") [Doc. 1], asserting

1

nine causes of action against Deville, including: violation of the Defend Trade Secrets Act (DTSA), specific performance, breach of contract, violation of the Louisiana Uniform Trade Secrets Act (LUTSA), violation of the Louisiana Unfair Trade Practices Act (LUTPA), unjust enrichment, breach of fiduciary duties, fraud, and injunctive relief. [*Id.*]. Specifically, the Complaint alleges that, prior to his resignation, Deville: (i) solicited employees in Volt Power's Joint Use Division to leave the company and work for Shelton Energy; (ii) used at least two portable storage drives to access and misappropriate several files on his work computer that contained Volt Power's proprietary and confidential information; (iii) engaged in a fraudulent billing scheme to obtain a higher revenue bonus; and (iv) attempted to solicit at least one of Volt Power's clients to become a client of Shelton Energy. [*Id.* ¶¶ 8, 9, 10, 11].

Currently pending before the Court is a Motion for Entry of Preliminary Injunction [Doc. 13] filed by Volt Power on March 17, 2021. In its Motion, Volt Power moves this Court for a preliminary injunction ordering: (i) Deville and any third party with whom he has shared Volt Power's proprietary information to cease using and to return such information; (ii) Deville to provide verifiable forensic evidence that Volt Power's property was not disseminated to a third party, and if it was disseminated, to prove that the property has been permanently purged from electronic devices and storage accounts; and (iii) Deville and any third party with whom he has shared Volt Power's proprietary information to allow Volt Power's selected forensic provider to conduct a full forensic inspection of electronic devices and storage accounts most

likely to contain evidence of Deville's use or disclosure of such information.[1] Deville opposed the Motion on April 7, 2021. [Doc. 20].

At the hearing conducted on April 21, 2021, Volt Power presented testimony from Christine Carling, Volt Power's Division Manager of Joint Use; Martin Siefert, an expert in digital forensics; Deville; and Derek Staedtler, Volt Power's Vice President of Operations for the southwest region. Deville introduced testimony from William J. Green, an expert in digital forensics, and Michael B. Carbo, Shelton Energy's Chief Financial Officer. He also testified on his own behalf.

Thereafter, the Court orally granted in part and denied in part the Motion and discussed the scope of the injunction on the record. The Court issues this Memorandum Order expressing its reasons for granting a limited preliminary injunction and outlining the scope of the injunction.

## LAW AND ANALYSIS

A preliminary injunction is warranted if the movant establishes four elements: (i) a substantial likelihood of success on the merits; (ii) a substantial threat that failure to grant the injunction will result in irreparable injury; (iii) the threatened injury outweighs any damage that the injunction may cause the opposing party; and (iv) the injunction will not disserve the public interest. *Big Tyme Investments, L.L.C. v. Edwards*, 985 F.3d 456, 463–64 (5th Cir. 2021). "A preliminary injunction is an

---

[1] In the Motion, Volt Power also included a request for the Court to enjoin Deville from performing any work on behalf of Shelton Energy or on behalf of any other competitor of Volt Power. At the hearing on April 21, 2021, in response to questioning from the Court, Volt Power denied that it sought this relief. Accordingly, the Court struck this request from the Motion.

extraordinary remedy that should not be granted unless the party seeking it has clearly carried the burden of persuasion on all four requirements." *Id.* After considering the facts and claims at issue in connection with each of these four elements, the Court finds that the weight of the evidence presented at the hearing and applicable law warrant the issuance of a limited preliminary injunction.

I. **A Substantial Likelihood of Success on the Merits**

"To show a likelihood of success, the plaintiff must present a prima facie case, but need not prove that he is entitled to summary judgment." *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 582 (5th Cir. 2013). Here, the Court finds that Volt Power has presented sufficient evidence to establish a prima facie case under LUTSA.

To recover under LUTSA, the plaintiff must prove the existence of a trade secret, the misappropriation of the trade secret by another, and actual loss caused by the misappropriation. *Brand Servs., L.L.C. v. Irex Corp.*, 909 F.3d 151, 156 (5th Cir. 2018). At the hearing, Volt Power introduced testimony that Deville transferred at least one piece of confidential, proprietary information from his work computer onto a personal USB thumb drive prior to his resignation – namely, an excel spreadsheet with Volt Power's bid financials ("the bid financials spreadsheet") generated for one of its clients.

"Trade secret" is defined as information that "derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from

4

its disclosure or use, and is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." La. Rev. Stat. Ann. § 51:1431(4). Several witnesses, including Deville, testified at the hearing that the bid financials spreadsheet contains pricing information that is confidential to Volt Power and valuable by virtue of its confidentiality. Significantly, only a few designated employees had access to the spreadsheet. Shelton Energy's CFO, Michael B. Carbo, even acknowledged that his company considers similar spreadsheets and documents related to pricing confidential. Thus, Volt Power has proven the existence of a trade secret.

Next, LUTSA, in pertinent part, defines "misappropriation" as the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means." La. Rev. Stat. Ann. § 51:1431(2)(a). Both parties' digital forensic experts testified that Deville transferred various electronic files from a folder on his Volt Power work computer onto a personal USB thumb drive before he resigned. Testimony further revealed that the bid financials spreadsheet was in the folder of documents that Deville transferred. Though Deville ultimately admitted that he transferred the bid financials spreadsheet onto his thumb drive when confronted with forensic evidence, he denied intentionally copying the spreadsheet – stating instead that he was only interested in making sure he retained copies of his 2019 personal tax returns. Because additional evidence demonstrated that Deville opened and viewed work-related documents on his Volt computer immediately after transferring them to his thumb drive, the Court does not

5

find Deville's testimony credible in this regard. At a minimum, Deville had reason to know that the spreadsheet was transferred to his thumb drive, which, notably, he claims cannot be located now. Volt Power has established Deville's misappropriation of the bid financials spreadsheet.

Finally, the Court finds that Volt Power has met its burden of demonstrating an actual loss because Deville, in quick succession: (i) copied the bid financials spreadsheet to his thumb drive, (ii) deleted the spreadsheet from his Volt work computer, and (iii) left Volt Power for a similar position at a rival company, Shelton Energy. Therefore, Volt Power has proven a substantial likelihood of success on the merits, meeting the first requirement to obtain a preliminary injunction.

## II. Substantial Threat of Irreparable Injury

To satisfy the second element, Volt Power "must demonstrate that if the district court denied the grant of a preliminary injunction, irreparable harm would result." *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011). Generally, harm is irreparable when there is no adequate remedy at law. *Id.* "Finally, a showing of '[s]peculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant.'" *Id.*

The Court finds that Volt Power has carried its burden of proving a substantial threat of irreparable injury if an injunction is not granted. Deville's possession of, at a minimum, Volt Power's bid financials spreadsheet, impairs the Court's ability to grant an adequate remedy at law. Specifically, Deville's claimed inability to produce his USB thumb drive creates the need to ensure that Volt Power's confidential

6

information is protected, especially given Deville's new position in Shelton Energy's Joint Use Division. Further, testimony at the hearing revealed that Volt Power has lost at least one client to Shelton Energy since Deville's resignation. Accordingly, injunctive relief is necessary to ensure that Deville is not improperly using Volt Power's proprietary information, including, but not limited to, the bid financials spreadsheet.

## III. Balance of Harms and Service of the Public Interest

Regarding the third element, the Court concludes that, for the reasons discussed *supra*, Volt Power's threatened injury outweighs any harm that the injunction may cause Deville. The possibility that Deville – now employed by a Volt Power competitor, Shelton Energy – is in possession of Volt Power's proprietary, confidential information heavily outweighs any adverse impact, if any, that Deville might sustain.

Lastly, the injunction will not disserve the public interest because the public has a significant interest in protecting against the misappropriation of trade secrets. *See Centurum Info. Tech. Inc. v. Geocent, LLC*, CV 21-0082, 2021 WL 533707, at *15 (E.D. La. Feb. 12, 2021) (citing *Aspen Tech., Inc. v. M3 Tech., Inc.*, 569 F. App'x 259, 273 (5th Cir. 2014) (finding that "it was in the interest of public policy to prohibit the sale and use of M3 products containing infringing source code and that were derived from the improper misappropriation of trade secrets"). Ultimately, the evidence weighs in favor of granting a limited preliminary injunction in favor of Volt Power.

IV. **Scope of the Preliminary Injunction**

Given the foregoing, the Court crafts a limited preliminary injunction in this matter as follows:

1) Deville and any third party with whom Deville has shared Volt Power's confidential, proprietary information or otherwise acted in concert or participation with Deville within the meaning of Fed. R. Civ. P. 65 (d)(2)(C),
   a. are enjoined from possessing and using such information,
   b. shall purge the property from all electronic devices and databases, and
   c. shall return the property to Volt Power forthwith.

2) Volt Power and Shelton Energy shall agree on a third-party digital forensic analyst to search:
   a. all computers utilized by Deville in connection with his employment at Shelton Energy; and
   b. Shelton Energy's electronic databases

   for proprietary information belonging to Volt Power. Any information obtained shall be purged from Shelton Energy's devices and databases and returned to Volt Power. Volt Power shall bear the entirety of the cost of the forensic examination and any subsequent remediation.

This preliminary injunction shall remain in effect until the issuance of permanent injunction, further order of the Court, or resolution of this matter. Volt Power is not required to post security because the Court finds that there is no likelihood that

Deville will suffer any financial harm during the pendency of the preliminary injunction.

## CONCLUSION

Accordingly, IT IS ORDERED that Volt Power's Motion for Preliminary Injunction [Doc. 13] is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that the Motion is GRANTED with respect to the scope of the preliminary injunction described herein.  In all other respects, the Motion is DENIED.

THUS, DONE AND SIGNED in Chambers on this 27th day of April 2021.

*David C. Joseph*
DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE