## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## ALEXANDRIA DIVISION

| | |
|---|---|
| **VOLT POWER, LLC** | **CIVIL DOCKET NO. 1:21-CV-00395** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **JAMES ERIC DEVILLE, ET AL** | **MAGISTRATE JUDGE JOSEPH H.L. PEREZ-MONTES** |

### MEMORANDUM RULING

Before the Court is a MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion") filed by Defendant, Shelton Energy Solutions, LLC ("Shelton Energy"). [Doc. 53]. For reasons which follow, the Motion is DENIED.

### BACKGROUND

Plaintiff, Volt Power, LLC ("Volt Power"), is a company in the business of servicing the needs of power companies, including performing safety audits, conducting post-storm equipment assessments, and providing assistance with government permitting. [Doc. 50 ¶ 13]. Defendant James Eric Deville ("Deville") began working for Volt Power on March 5, 2018 as a "Joint Use Division Manager." [Doc. 50 ¶ 20]. Volt Power alleges that while employed in this role Deville had access to certain confidential and proprietary information related to Volt Power's "clients, suppliers, and business methods and practices," including pricing and billing information. [Doc. 50 ¶¶ 22, 23].

On December 23, 2020, Deville notified Volt Power that he would be resigning in two weeks. Prior to the expiration of the two-week period, however, on January 4,

1

2021 at 4:30 a.m., Deville sent an email to Volt Power management stating that he was terminating his employment "effective immediately." [Doc. 50 ¶¶ 28, 29, 31]. Volt Power alleges that soon thereafter Deville accepted employment with its competitor, Shelton Energy, taking with him Volt Power's clients, employees, and proprietary information. [Doc. 50 ¶¶ 31, 33-45, 55-58].

On February 15, 2021, Volt Power filed suit against Deville seeking relief for: (i) violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836 ("DTSA"); (ii) specific performance; (iii) breach of contract; (iv) violation of the Louisiana Uniform Trade Secrets Act, La. R.S. § 51:1431 ("LUTSA"); (v) violation of the Louisiana Unfair Trade Practices Act, La. R.S. § 51:1401 ("LUTPA"); (vi) unjust enrichment; (vii) breach of fiduciary duties; and (viii) fraud. [Doc. 1]. Volt Power also requested injunctive relief asking this Court to order Deville and any third-party with whom he had shared Volt Power's proprietary information to: (i) cease using and return the information, (ii) provide verifiable forensic evidence that Volt Power's property was not disseminated to a third party or that the property had been permanently purged from electronic devices and storage accounts, and (iii) allow Volt Power's selected forensic provider to conduct a full forensic inspection of electronic devices and storage accounts. [Doc. 13 p. 3-4].

A hearing on the MOTION FOR PRELIMINARY INJUNCTION [Doc. 13] was held on April 21, 2021, after which the Court orally granted in part and denied in part the Motion and discussed the scope of the injunction on the record. [Doc. 34]. The Court subsequently issued a written MEMORANDUM ORDER (the "Injunction") providing its

2

reasons and outlining the scope of the preliminary injunction. [Doc. 37]. The Injunction noted that Volt Power presented sufficient evidence to establish a prima facie case under the LUTSA, had met its burden of proving a substantial threat of irreparable injury if the injunction was not granted, had shown that its threatened injury outweighed any harm that the injunction may cause Deville, and that the injunction was not contrary to public interest. [Doc. 37 p. 4-7]. Generally, the Injunction: (i) prohibited Deville, and any third party with whom he had shared Volt Power's confidential and proprietary information or with whom he acted in concert with, from possessing Volt Power's proprietary information, and (ii) ordered that such information be purged from all electronic devices and databases and returned to Volt Power. [Doc. 37 p. 8]. The Court also ordered Volt Power and Shelton Energy to agree on a third-party forensic analyst to search Shelton Energy's electronic databases and any computers Deville used as an employee of Shelton Energy. [Doc. 37 p. 8].

After the forensic examination was conducted, Volt Power filed an Amended Complaint adding Shelton Energy as a defendant and alleging that the forensic examination had revealed that Deville, "as a Shelton Energy employee, and presumably at Shelton Energy's direction," obtained Volt Power's information from his former colleagues to use at Shelton Energy. [Doc. 50 ¶ 9]. Additionally, Volt Power claims that Deville, acting as a Shelton Energy employee, obtained confidential and proprietary information via Volt Power's clients, and attempted to solicit clients from Volt Power on behalf of Shelton Energy. [Doc. 50 ¶ 9]. Volt Power also alleges that

on at least one occasion Deville identified himself with Shelton Energy to a customer despite his then employment with Volt Power. [Doc. 50 ¶ 9].

Shelton Energy filed this Motion on November 15, 2021, claiming, generally, that Volt Power's Amended Complaint fails to make specific factual allegations related to Shelton Energy's purported violations of the DTSA, LUTSA, and LUTPA – instead merely attributing Deville's actions to Shelton Energy. [Docs. 53-1 p. 2; 63 p. 1-2]. Without the requisite factual allegations, Shelton Energy contends that Volt Power's claims under the DTSA, LUTSA, and LUTPA "are nothing more than a formulaic recitation of the elements." [Doc. 53-1 p. 4, 6].

In response, Volt Power posits that the Amended Complaint sufficiently alleges that Deville and Shelton Energy acted in concert to use Deville's relationship with his former employer to elicit proprietary information from Volt Power and gain a competitive advantage. [Doc. 56 p. 2-3].

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move for dismissal of a plaintiff's claims before filing its answer when the pleadings, on their face, fail "to state a claim upon which relief can be granted." A pleading states a claim for relief when, *inter alia*, it contains "a short and plain statement … showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it contains sufficient "factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility requires more than just the "sheer possibility" that a defendant acted unlawfully; it calls for enough facts "to raise a reasonable expectation that discovery will reveal evidence" to support the elements of the claim. *Twombly*, 550 U.S. at 556. Although the Rule 8 pleading standard does not require "detailed factual allegations," mere "labels and conclusions," or "a formulaic recitation of the elements of a cause of action" do not suffice. *Id.* at 555.

In ruling on a Rule 12(b)(6) motion, a court may rely on the complaint, its attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). A court must accept as true all factual allegations, although the same presumption does not extend to legal conclusions. *Iqbal*, 556 U.S. at 678. In sum, if the factual allegations asserted in the complaint are wholly speculative or if it is apparent from the face of the complaint that there is an absolute bar to recovery, the claim should be dismissed. *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955.

## LAW AND ANALYSIS

### I. Plaintiff's Claims under the Defend Trade Secrets Act (DTSA) and Louisiana Uniform Trade Secrets Act (LUTSA)

To successfully bring a claim alleging a violation of the DTSA, a plaintiff must show, "(1) the existence of a trade secret; (2) misappropriation of the trade secret by another; and (3) the trade secret's relation to a good or service used or intended for use in interstate commerce." 18 U.S.C. § 1836(b)(1); *Sapienza v. Trahan*, 2017 WL 6012658, at * 6 (W.D. La. Oct. 23, 2017). Similarly, a claim under the LUTSA

5

requires a plaintiff to prove, "(1) the existence of a trade secret; (2) misappropriation of the trade secret by another; and (3) actual loss caused by the misappropriation." La. R.S. §§ 51:1431, 51:1433, *Sapienza*, 2017 WL 6012658 at *6 (citing *Computer Management Assistance Co. v. Robert F. DeCastro*, Inc., 220 F. 3d 396 (5th Cir. 2000)).

Both the DTSA and the LUTSA define "trade secret" generally as information "that derives independent economic value," is not "generally known," or "readily ascertainable through proper means," and is the subject of the owner's reasonable methods to maintain the information's secrecy. 18 U.S.C. § 1839(3); La. R.S. § 51:1431(4). Volt Power specifically alleges that information related to client contact identities, crew rates, bid proposals, and sales strategies, among other things, are trade secrets and that it has sought to protect this information by restricting access, enabling password protections, and requiring employees to agree to comply with its "Code of Business Conduct," which included non-disclosure provisions. [Doc. 50 ¶¶ 66, 81, 82]. Additionally, Volt Power alleges that the confidential and proprietary nature of this information creates a competitive advantage for Volt Power and therefore provides economic value. [Doc. 50 ¶ 66].[1]

The Court finds that Volt Power's factual assertions stating the economic value it derives from the proprietary nature of the subject information and its measures to maintain the secrecy of the information are sufficient to plausibly maintain the

---

[1] It should also be noted that this Court has already made a finding for purposes of the Injunction that Deville improperly transferred at least one document from his Volt Power computer to a personal USB thumb drive. [Doc. 37 p. 5]. The Court further found that the document taken by Deville was valuable due to its limited access and confidential nature and was therefore a trade secret. [Doc. 37 p. 5].

Case 1:21-cv-00395-DCJ-JPM Document 67 Filed 01/06/22 Page 7 of 12 PageID #: 1364

existence of a trade secret. *See, e.g., Source Production v. Equipment Co., Inc. v. Schehr*, 2017 WL 3721543 (E.D. La. Aug. 29, 2017) (holding that the plaintiff alleged sufficient facts to show the existence of trade secrets by listing in their complaint the technologies used as methods in manufacturing, demonstrating how this technology was kept secret by physical and electronic limited access, and alleging that maintaining the secrecy of this information provided a competitive advantage and therefore the trade secrets had economic value.)

Volt also pleads facts specifically related to its claim that Shelton Energy has misappropriated its trade secrets. In relevant part, the DTSA considers misappropriation to include:

> (B) disclosure or use of a trade secret of another without express or implied consent by a person who—
> (ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was—
> (I) derived from or through a person who had used improper means to acquire the trade secret;
> (II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit use of the trade secret; or
> (III) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret.

18 U.S.C. § 1839(5).

The LUTSA has a nearly identical definition for what is considered "misappropriation." La. R.S. § 51:1431(2).

Volt Power claims that Shelton Energy misappropriated its trade secrets when Deville, for the benefit of Shelton Energy, converted its trade secrets and Shelton Energy received information that it "knew was acquired by improper means." [Doc.

7

50 ¶ 67-68]. Additionally, Volt Power asserts that misappropriation occurred when Defendants continued to use and refused to return the acquired trade secrets. [Doc. 50 ¶ 84-85]. Volt Power has alleged facts related to Deville's access to trade secrets, his misappropriation of specific documents containing trade secrets by uploading them to a personal USB drive, and the misappropriation by Shelton Energy when it received the proprietary information that it knew was wrongfully acquired. [Doc. 50 ¶¶ 22, 37, 68].

The Court finds that these allegations, accepted as true for purposes of this Motion, are sufficient to establish a plausible claim of misappropriation under the DTSA and LUTSA. *See, e.g., Total Safety U.S., Inc., v. Code Red Safety & Rental, L.L.C.*, 2019 WL 5964971 at * 4 (E.D. La. Nov. 13, 2019) (holding that the plaintiff sufficiently pled factual allegations under DTSA and LUTSA related to the misappropriation of its trade secrets when it alleged that its former employee transferred specific files to an unreturned external hard drive, and that his new employer approved of the copying and use of these trade secrets, continued the misappropriation by using this confidential information, and knew that such information was acquired by improper means.)

Volt Power likewise pleads facts sufficient to show a plausible claim related to the third element of the DTSA. Volt asserts that it is engaged in interstate commerce because it "conducts business throughout the country, including over the phone, on the internet, and via mail service." [Doc. 50 ¶ 66]. Volt Power also asserts that it,

"has field operations and offices in numerous states throughout the Southeast and Midwest United States." [Doc. 50 ¶ 12].

These allegations are sufficient to show that the trade secrets are related to a good or service used in interstate commerce. *See, e.g., Complete Logistical Servs., LLC v. Rulh*, 350 F. 3d 512, 520 (E.D. La. 2018) (finding that the plaintiff's allegation that it is "headquartered in other states, and regularly transacts business in states other than Louisiana, including in person and by phone, internet, and mail," and the submission of a customer list that included out of state customers was sufficient to meet the jurisdictional requirement of the DTSA.)

Likewise, sufficient to meet the third element of the LUTSA, Volt Power states that it has suffered "substantial damages" and "irreparable injury" due to the Defendants' actions, including the risk that Volt Power's competitors may gain an unfair competitive advantage by the disclosure of its proprietary information. [Doc. 50 ¶¶ 10, 19, 87]. Volt Power also sufficiently alleges that it has incurred costs in the form of reputational and financial damage caused by losing employees, costs related to the transfer of Volt Power's confidential information to a competitor, and costs incurred in attempting to remediate the damages caused by the Defendants. [Doc. 50 ¶ 92].

These allegations are sufficient at this stage to meet the LUTSA's third requirement of showing "actual loss caused by the misappropriation." *See Reingold v. Swiftships, Inc.*, 126 F. 3d 645, 651 (5th Cir. 1997) and *CaseExperts, LLC v. CompStar Systems, Inc.*, 2010 WL 4553926 at *5 (W.D. La. Nov. 3, 2010) (both finding

9

that a loss of compensation due to the misappropriation of a trade secret constitutes "actual loss" within the meaning of the LUTSA.)

## II. Louisiana Unfair Trade Practices Act (LUTPA)

LUTPA proscribes "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." La. R.S. § 51:1405. To successfully bring a claim under LUTPA, the plaintiff must "prove some element of fraud, misrepresentation, deception or other unethical conduct." *Omnitech Intern., Inc. v. Clorox Co.,* 11 F.3d 1316, 1332 (5th Cir. 1994). "A trade practice is unfair under the statute only when it offends established public policy and is immoral, unethical, oppressive or unscrupulous." *Computer Mgmt. Assistance Co. v. Robert F. DeCastro, Inc.,* 220 F.3d 396, 404 (5th Cir.2000). The scope of what is considered "unfair" is "extremely narrow" and a plaintiff seeking to recover under LUTPA must show that the alleged conduct, "offends established public policy and … is immoral, unethical, oppressive, unscrupulous, or substantially injurious." *Pyramid Instrumentation & Electric Corp. v. Herbert*, 2018 WL 1789325 at * 4 (W.D. La. March 14, 2018) (quoting *Cheramie Svcs., Inc. v. Shell Deepwater Prod., Inc.*, 35 So,3d 1053, 1059 (La. 2010)). However, the confines of what is properly considered an "unfair" trade practice is largely left to the discretion of the court. *Turner v. Purina Mills, Inc.,* 989 F.2d 1419, 1422 (5th Cir. 1993).

Volt Power has alleged that Shelton Energy violated LUTPA by engaging in conduct "with the express and specific intent of damaging Volt Power's reputation, business, and competitive abilities." [Doc. 50 ¶ 90]. Specifically, Volt Power alleges

that Shelton Energy utilized Deville's position as a former employee of Volt Power to solicit employees, solicit clients, and solicit proprietary information from clients to obtain an unfair competitive advantage. [Doc. 50 ¶ 91].

The Court finds that these allegations are sufficient to establish a plausible LUTPA claim at this stage in the litigation. *See, e.g., Bureau Veritas Commodities and Trade, Inc. v. Nanoo,* 2021 WL 2142466 at *8 (E.D. La. May 26, 2021) (holding that the plaintiff established a plausible claim under the LUTPA due to its allegations that the defendant had misappropriated its trade secrets); *Elliot Company v. Montgomery*, 2016 WL 6301042 at * 6 (W.D. La. Sept. 28, 2016) (holding that the plaintiff's allegation that a former employee misappropriated confidential information and provided it to a direct competitor for its benefit was sufficient to establish a cause of action under LUTPA).[2]

---

[2] In its Motion, Shelton Energy alleges that Volt Power's LUTPA claim is subject to Fed. R. Civ. P. 9(b)'s heightened pleading requirement, citing *Cooper v. Primary Care Solutions, Inc.* 2017 WL 4544606 (M.D. La. Oct. 11, 2017). In *Cooper*, the Middle District held that the plaintiff's claim under the LUTPA was subject to the heightened pleading requirement because the claim was based on alleged fraudulent conduct. *Id.* The instant matter is distinguishable from *Cooper*. Here, Volt Power has alleged, as the basis of its LUTPA claim, that Shelton Energy's conduct was unfair, "offends established public policy and is immoral, unethical, oppressive, unscrupulous, and substantially injurious," and is therefore in violation of the LUTPA. [Doc. 50 ¶ 90]. Volt Power, however, does not allege that Shelton Energy acted in a fraudulent manner with respect to Volt Power or otherwise engaged in deceit or misrepresentation in their bilateral dealings. Because Volt Power's claim alleging a LUTPA violation is based on unfair conduct, rather than fraudulent conduct, the heightened pleading requirement of Rule 9(b) does not apply. *See, e.g., House of Raeford Farms of Louisiana LLC v. Poole*, 2021 WL 1081837 (W.D. La. Mar. 18, 2021) (finding that the plaintiff failed to plead factual allegations with the requisite specificity sufficient to establish a claim for fraud, but that the plaintiff's LUTPA claim alleging "unfair and deceptive trade practices," was pled with sufficient facts to support a claim for relief, noting that "fraud is not a necessary element of a LUTPA claim.")

Volt Power has alleged facts that, when accepted as true, establish a plausible claim for relief under the DTSA, LUTSA, and LUPTA. Accordingly, the Court denies Shelton Energy's Motion.

## CONCLUSION

For the foregoing reasons,

IT IS HEREBY ORDERED that Defendant's MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM [Doc. 53] is DENIED.

THUS, DONE AND SIGNED in Chambers on this 6th day of January 2022.

DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE